# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| ANGELA M. STITES, | : | |
| | : | Case No. 1:21CV224 |
| Petitioner, | : | |
| | : | Judge Dlott |
| v. | : | |
| | : | Magistrate Judge Litkovitz |
| WARDEN,[1] | : | |
| Dayton Correctional Institution, | : | |
| | : | **HABEAS CORPUS** |
| Respondent. | : | |

## RESPONDENT'S ANSWER/RETURN OF WRIT

Now comes Respondent, by and through counsel, and hereby denies each of the allegations made by Petitioner Angela M. Stites (hereinafter "Stites"), except those expressly admitted herein. Stites brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. Section 2254. Hereinafter, Respondent shows cause why the writ should not be issued

Respectfully submitted,

DAVE YOST
Ohio Attorney General

s/ M. Scott Criss
M. SCOTT CRISS (0068105)
Assistant Attorney General
Criminal Justice Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233
(866) 393-1150 fax
Scott.Criss@OhioAGO.gov

---

[1] Shelbie Smith is the Warden at the Dayton Correctional Institution where Petitioner Angela Stites is currently incarcerated Therefore, Shelbie Smith is the proper party Respondent.

I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

    A.     **Statement of Facts**

The Court of Appeals of Ohio, First Appellate District, Hamilton County, set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct" and Stites has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998) *cert. denied*, 527 U.S. 1040 (1999):

> Stites developed a relationship with Herman See in 1998. At the time the two started their relationship, Stites had a daughter from a previous relationship, E.M, and See had two children from his previous relationships, a son, Robert See, and a daughter, S.J.S. Stites and See then had biological children together: two girls, K.S. and W.S., and a boy. The blended family lived together in Colerain Township and Norwood until November of 2017 when the Norwood Police Department initiated an investigation into allegations that See had been raping his daughter, K.S. K.S.'s allegations led to a broader investigation of sexual abuse by See and Stites as well. As a result of the investigation, the state indicted See and Stites with a litany of charges regarding not only K.S., but also K.S.'s two, older half-sisters, E.M. and S.J.S. The matter proceeded to a jury trial in which See and Stites were tried together.
>
> At trial, K.S. recalled that the abuse by her father had begun sometime around the age of six when they lived in Colerain Township. K.S. recalled a specific incident where she had performed fellatio on her father, and her father had performed cunnilingus on her. K.S. remembered a time where See had made her wear her mother's green lingerie, and that See had used various sex toys on her. K.S. recalled that See had performed cunnilingus on her the day of her seventh birthday party in April of 2006.
>
> According to K.S., Stites knew about the sexual abuse, because Stites "walked in" on See and K.S. engaged in sexual activity when K.S. was ten or 11 years old. Stites would also "start fights" with K.S. and See on the days when Stites found out about their sexual activities. K.S. further testified that she had overheard conversations between See and Stites in which the two discussed See's sexual activities with K.S.

The summer before K.S. started the sixth grade, sometime between June 2010 and July 2010, K.S. recalled that See actually penetrated her with his penis. K.S. remembered that the penetration had occurred on a white leather couch. K.S. estimated that her father had sexual intercourse with her over 200 times after that time. K.S. also recalled that when she had started dating her boyfriend, sometime in December 2012, her father had sex with her.

In April 2015, K.S., then 15, gave birth to a baby girl, and K.S.'s doctor advised her to abstain from intercourse for a period of time. K.S. recalled that her father had sex with her when her doctor permitted her to have sex again. K.S. also recalled that her father had sex with her on her baby's first Christmas Eve.

In 2017, K.S. moved in with the father of her baby. Before she moved, Stites asked K.S. how she felt about her father taking her virginity. K.S. said that it was not until she told her boyfriend about the abuse that she realized what she had experienced amounted to sexual abuse. Her boyfriend encouraged her to go to the Norwood police.

K.S.'s older stepsister, E.M. testified at trial regarding her abuse. E.M. primarily resided with her biological father, Stites's ex-husband, but E.M. visited the See home regularly. E.M. testified that she recalled the abuse beginning around the age of three or four. E.M. recalled See had inserted his fingers in her vagina and had licked her vaginal area. E.M. also recalled a time around her fifth birthday where See had made her perform oral sex on him. E.M. remembered S.J.S had been there as well. After this incident, E.M. testified that the sexual abuse occurred regularly at the See home.

In late 2010, when E.M. was 14, See told her that he had heard she was no longer a virgin. When E.M. responded in the affirmative, See had vaginal intercourse with her. By E.M.'s estimate, See had sex with her between 20 and 50 times.

According to E.M., Stites knew about the abuse as well. Stites told E.M. that if she did not allow See to have sex with her, then she would never know a "real man's love." E.M. also recalled a time in elementary school when Stites had demonstrated oral sex by using a popsicle.

E.M. testified that she could clearly recall the last time See had sex with her: On January 1, 2012, E.M.'s friend had died the night before in a car accident, and See had sex with her to "cheer her up." E.M. then disclosed the abuse to her biological father. Her father

reported E.M.'s allegations to the Norwood police. An investigation ensued, but the grand jury did not return an indictment. E.M. testified that she had begun abusing drugs and her life spiraled out of control. At the time of trial, E.M. was incarcerated.

E.M.'s stepsister, S.J.S., the biological daughter of See and See's ex-wife, Dawn, also testified at trial regarding her abuse. S.J.S. testified that See and Stites first abused her in 2001, when S.J.S. was eight years old. S.J.S. lived with her mother at the time in Florida, but she came to Ohio to stay with her father for the summer. One night, See came into S.J.S.'s bedroom and asked her if she wanted a blue lollipop. S.J.S. said yes, and See told her that she could have it if she "gave him oral sex." S.J.S. and See walked to the family room and S.J.S. performed fellatio on him. E.M. walked into the room during the encounter, and then E.M. also performed fellatio on him. S.J.S. testified that See had tried to have sex with her, but he stopped when S.J.S. told him it hurt. S.J.S. testified that Stites had been present during the encounter, that Stites had licked her vagina, and that S.J.S. had licked Stites's vagina. See and Stites also encouraged S.J.S. and E.M. to put their fingers in each other's vaginas.

At the end of the summer of 2001, S.J.S. told her mother what had happened with See and Stites. Dawn testified at trial that she had called See and then the Florida police after S.J.S.'s disclosure. The following day, See called S.J.S. and told her that if she told the police what had happened, he would go to prison for the rest of his life. As a result, S.J.S. told the police that the abuse had been a dream.

The following year, the summer of 2002, S.J.S. came to Ohio again to spend the summer with See and Stites. See began to have vaginal intercourse with S.J.S. on a regular basis. Two or three times during the summer of 2002, Stites made S.J.S. lick Stites's vagina and then Stites would lick S.J.S.'s vagina. This abuse continued each summer in 2003, 2004, and 2005. In 2005, S.J.S. cried while See had sex with her, and S.J.S. told See that she did not want to have sex anymore. S.J.S. never slept at See's home again.

S.J.S. testified that the police had contacted her in 2012, after E.M.'s disclosure. S.J.S. lied to police and told them that she had never experienced abuse. S.J.S. testified that she had lied to police to protect See, but she regretted not coming forward to support E.M.

Several other family members, including See and Stites's son and daughter, W.S., testified that they had never witnessed any abuse, nor had they been subjected to any abuse. Stites testified in her own defense and maintained that none of the sexual incidents happened,

4

> and that each of the girls had a motivation to lie. Stites testified that she and See had become the main caregivers for K.S.'s baby, and that Stites had threatened to take custody of the baby away from K.S. According to Stites, S.J.S. believed that Stites had been responsible for breaking up the marriage with S.J.S's biological father. Stites testified that she and See had kicked E.M. out of their home because of E.M.'s drug use and behavior.
>
> At the conclusion of the evidence presented at trial, the jury found Stites guilty of several crimes alleged to have occurred in the summer of 2001: four counts of rape with respect to S.J.S. as alleged in Counts 20, 21, 27, and 28; complicity to rape E.M. and S.J.S. as alleged in Counts 23 and 26; and gross sexual imposition with regard to E.M. and S.J.S. as alleged in Count 24.
>
> The jury found that Stites was complicit to See's rape of K.S., which the jury found had occurred sometime between 2007 and 2012 as alleged in Count 38. Also with respect to K.S., the jury found Stites guilty of two counts of endangering children as alleged in Count 39 and Count 41. Finally, the jury found Stites guilty of complicity to sexual battery with respect to E.M., which had occurred in early 2011 as alleged in Count 15.
>
> The jury found Stites not guilty of two counts of complicity to sexual battery with regard to E.M. and K.S., which had allegedly occurred in January 2012 and April 2015, as stated in Count 17 and Count 40.
>
> The trial court sentenced Stites to an aggregate sentence of 86 years in prison.

(State Court Record, Exhibit 10, Opinion, pp. 2-4, ECF No. 9, PageID #: 101-103).

**B.     Procedural History**

**State Conviction**

On June 25, 2018, a Hamilton County Grand Jury issued a forty-one count indictment charging Stites with Sexual Battery (R.C. 2907.03(A)), Complicity to Sexual Battery (R.C. 2923.03(A)(2)), Endangering Children (R.C. 2919.22(A)), Rape (R.C. 2907.02(A)(1)(b)), Complicity to Rape (R.C. 2923.03(A)(2)), including a sexual

5

motivation specification and Gross Sexual Imposition (2907.05(A)). (State Court Record, Exhibit 1, Case No. B-1803242, ECF No. 9, PageID #: 30 ). Stites, through counsel, entered a plea of not guilty to the indictment. On September 2, 2018, Stites filed a motion to dismiss two counts of endangering children (Counts 18 and 37) as outside the statute of limitations. (State Court Record, Exhibit 2, ECF No. 9, PageID #: 54). The motion was granted. (State Court Record, Exhibit 3, ECF No. 9, PageID #: 56). The case proceeded to a jury trial and Stites was found guilty on all charges with the exception of Count 36, Complicity (Rape) and Count 40, Complicity (Sexual Battery). (State Court Record, Exhibits 4-5, ECF No. 9, PageID #: 57, 58). On March 29, 2019, Stites was ordered to serve an aggregate term of eighty-six years incarceration. (State Court Record, Exhibit 6, PageID #: 59).

**Direct Appeal**

Represented by different counsel than at trial, Stites timely appealed her convictions and sentence to the First District Court of Appeals, Hamilton County. (State Court Record, Exhibit 7, Case No. C-1900247, ECF No. 9, PageID #: 64).[2] In her brief, she raised ten assignments of error as follows:

1. The trial court erred to the prejudice of the Defendant when it continually allowed the State to introduce hearsay statements for the truth of the matter asserted.

2. The trial court abused its discretion when it permitted the State to impeach the Defendant using extrinsic evidence of a non-collateral issue.

---

[2] It appears that Stites filed a duplicate appeal under Case No. C-1900255. Although the docket does not indicate an entry of consolidation, all filings in Case No. C-1900255 are identical to those in Case No. C-1900247.

6

    3.    The trial court abused its discretion when it permitted the State to introduce evidence related to the Defendant's drug use.

    4.    The trial court abused its discretion when it allowed the State to elicit post-rape impact testimony.

    5.    The Defendant was denied due process and a fair trial when the trial court permitted the State to improperly vouch for and bolster the witnesses' testimony.

    6.    The trial court erred when it allowed the introduction of testimony surrounding the Grand Jury proceedings.

    7.    The trial court erred when it permitted Officer Kilby and Ms. Collopy to render expert opinions without providing the defense with an expert report.

    8.    The trial court abused its discretion when it permitted the State to produce photographs of the adult witnesses as children.

    9.    The trial court erred when it denied the Rule 29 motions because there was insufficient evidence to convict.

    10.    The trial court erred when it sentenced Angela to consecutive sentences when her convictions were allied offenses that should have merged at sentencing.

(State Court Record, Exhibit 8, ECF No. 9, PageID #: 65). The State filed a brief in response. (State Court Record, Exhibit 9, ECF No. 9, PageID #: 96). On September 2, 2020, the Court of Appeals reversed Stites's conviction on Count 27 and remanded the matter to the trial court to vacate Stites's conviction on that count and issue an amended sentencing entry reflecting a total aggregate sentence of 76 years. In all other respects, the appellate court affirmed the judgment of the trial court. (State Court Record, Exhibit 10, ECF No. 9, PageID #: 127).

On September 9, 2020, a nunc pro tunc judgment entry of sentence was filed pursuant to the Court of Appeals judgment entry and opinion. (State Court Record,

Exhibit 11, ECF No. 9, PageID #: 138).

Stites, through counsel, filed a timely appeal to the Ohio Supreme Court. (State Court Record, Exhibit 12, Case No. 20-1267, ECF No. 9, PageID #: 143).  In her memorandum in support of jurisdiction, she set forth a single proposition of law:

> 1. The introduction of the Grand Jury witness list and nature of witness testimony by the State in its case in chief without notice to the defendant violates a defendant's right to due process and a fair trial.

(State Court Record, Exhibit 13, ECF No. 9, PageID #: 151).  The State filed a memorandum in opposition. (State Court Record, Exhibit 14, ECF No. 9, PageID #: 181).  On December 29, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (State Court Record, Exhibit 15, ECF No. 9, PageID #: 191).

### C. Federal Habeas Corpus

On March 31, 2021, Stites, proceeding pro se, filed the instant federal habeas petition and raised a single ground for relief:

> **Ground One**:  The introduction of the Grand Jury witness list and nature of witness testimony by the State in its case in chief without notice to the Defendant violates a defendant's right to due process and a fair trial.
>
> **Supporting Facts**:  The evidence against Angela was weak but for the improperly introduced Grand Jury testimony.  The 2013 and 2018 Grand Jury content tipped the scales against Angela.  If the State is permitted to ambush the defense with evidence that is not obtainable through the discovery process, the constitutional rights of criminal defendants to a fair trial and due process in the State of Ohio are at jeopardy.

(Doc. 1, Petition).

## II. ARGUMENT

### A. Standard of Review.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. 86 (2011), citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). In other words, the authority to issue the writ exists only in cases "where there is no possibility fair-minded jurists would disagree that the state court's decision conflicts with this Court's precedents." *Richter,* 562 U.S. at 102.

Enacted in 1996, the AEDPA substantially altered the previously existing statutory basis for federal habeas corpus review of state criminal convictions by strengthening the presumption of correctness given to state court determinations. As Justice O'Connor stated in *Williams v. Taylor,* 529 U.S. 362 (2000), "[§2254(d)(1)] modifies the role of federal habeas courts in reviewing petitions filed by state prisoners." *Williams,* 529 U.S. at 403.

In *Williams,* the United States Supreme Court held as follows:

> Under §2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or facts. Under the "unreasonable application" clause, a federal habeas court may grant

9

> the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Williams*, 529 U.S. at 412-413.

In *Richter*, the Court reiterated once again the high level of deference owed to the state court's adjudication of a claim, whether or not its reasoning is evident.

> Under 2254(d), a habeas court must determine what arguments or theories supported, or as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Richter*, 562 U.S. at 102. As the Sixth Circuit has observed, this means that even if a federal court finds that it might have found the claim to be meritorious, it must refuse to issue the writ if the state court's decision was a reasonable one. *Machacek v. Hofbauer*, 213 F.3d. 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

Perhaps the Supreme Court's most succinct recapitulation of §2254's level of deference is captured in the following passage from *Richter*, wherein it explained that federal relief meant only to correct "extreme malfunction" in the state courts:

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunction in the state criminal justice systems, not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in the federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.

*Richter*, 562 U.S. at 103. (internal quotes and citations omitted).

10

### B. Stites procedurally defaulted this claim by failing to object at trial to the testimony regarding the grand jury proceedings.

Before turning to the merits of this claim, it must be argued that Stites conceded in her brief to the state court of appeals that this claim could only be reviewed for an abuse of discretion under the plain error standard. (State Court Record, Exhibit 8, Brief of Appellant, p. 9, ECF No. 9, PageID #: 78).

Ohio's contemporaneous objection rule has long been established as a recognized procedural default. See *Osborne v. Ohio*, 495 U.S. 103, 124 (1990). If a potential trial error is not objected to when it happens, a defendant has waived the error for review on appeal. If such a waiver occurs, the claim may only be reviewed for "plain error." *State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). Plain error review is not equivalent to a review on the merits and thus does not preclude a waiver due to a procedural bar. *Weeks v. Jones*, 26 F.3d 1030, 1045 (11th Cir. 1994).

The Sixth Circuit has held that an Ohio court's resort to a plain error analysis as an alternative holding when a claim has been procedurally defaulted is not a review on the merits. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000); *See also Seymour v. Walker*, 224 F.3d 542, 557(6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.") In *Scott*, the petitioner faced precisely the same problem presented here. The petitioner raised on appeal several errors occurring at trial to which no objections were raised at the time. The state courts recognized this procedural default, and proceeded to analyze the claims using the plain error

11

standard. *Scott*, 209 F.3d at 864. The Sixth Circuit conducted a lengthy analysis of Ohio's contemporaneous objection rule, using the factors set forth in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), and concluded that the rule is an adequate and independent state ground for a procedural default, despite any subsequent plain error review. *Scott*, 209 F.3d at 873.

Here, Stites conceded in her brief to the state court that the issue could only be reviewed for plain error. The state Court of Appeals, in turn, found that it had no merit under the plain error standard. (State Court Record, Exhibit 10, *State v. Stites*, 2020-Ohio-4281; ECF No. 9, PageID #: 127). Consequently, this claim cannot be reviewed for federal habeas corpus relief, as it has been waived by Stites, and must be dismissed.

### C. Stites's Due Process Claim Is Without Merit.

Petitioner Angela Stites complains in her federal petition that she suffered a due process violation when the state introduced at trial evidence pertaining to grand jury proceedings in a prior case. But, as explained above, she complained to the state court merely that the inclusion of the testimony was an "abuse of discretion" that amounted to plain error.[3] Regardless. this evidentiary claim does not rise to a due process violation.

---

[3] The fact that Stites did not raise this as a due process claim actually gives rise to a separate procedural default, as it was not fairly presented to the state courts as the same claim presented to his court. It is well-established that a habeas corpus petitioner must present both the factual and legal underpinnings of his federal claim to the state courts for the claim to be deemed "fairly presented." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). This requirement means that the petitioner must present his claim to the state courts as a federal constitutional issue and not merely as an issue arising under state law. *Id.* (Citing *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees*, 822 F.2d 1418 (6th Cir. 1987). If it is not fairly presented to the state courts, it must be dismissed by this court.

12

It is a general rule that assertions of error in evidentiary rulings cannot support the grant of relief in habeas corpus. *Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983); *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976).

> Our review of state court evidentiary rulings is extremely limited. "[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Lundy v. Campbell*, 888 F.2d 467, 469-70 (6th Cir. 1989) (deference should be accorded state court determinations of whether due process was denied by trial errors), *cert. denied*, 110 S.Ct. 2212 (1990).

*Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990).

Alleged errors of state law, "especially rulings regarding the admission or exclusion of evidence," are not within the purview of a federal habeas court. *Cooper v. Sowders*, 837 F. 2d 284, 286 (6th Cir. 1988). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bugh v. Mitchell*, 329 F. 3d 496,512 (6th Cir. 2003). Only when an evidentiary ruling is of such an egregious nature that it results in a denial of fundamental fairness may it amount to a denial of due process. *Id.*; *Walker v. Engle, supra*; *Maglaya v. Wainwright*, 515 F.2d 265 (6th Cir.), *cert. denied*, 423 U.S. 931 (1975).

The trial court's evidentiary decision to admit the evidence at issue involves a matter uniquely within the discretion of the state trial judge that does not rise to a constitutional magnitude. *Bell v. Arn*, 536 F.2d 123 (6th Cir. 1976). It is well established that "habeas review does not ordinarily extend to state court evidentiary rulings on the admissibility of evidence * * * errors of state law, especially errors based on a trial court's evidentiary rulings, do not, in and of

themselves, violate the constitution." *Buell v. Mitchell*, 274 F.3d 337, 357 (6th Cir. 2001) (quoting in part, *Neumann v. Jordan*, 84 F.3d 985, 988 (7th Cir. 1996)). Hence, without a showing of error of constitutional magnitude, petitioner's attacks upon the propriety of the trial court's discretionary decisions under Ohio law are simply not cognizable in federal habeas corpus.

Stites's complaint about the admission of details about the grand jury process is simply not a complaint of constitutional magnitude. To examine the claim, this court would necessarily have to examine the intricacy of Ohio's criminal and evidentiary rules and caselaw – law on which the Ohio courts are the final arbiter. In this case, the Ohio Court of Appeals discussed Stites's claim and determined that it had no merit in Ohio law.

> [*P43] In Stites's sixth assignment of error, she argues that the trial court abused its discretion in admitting evidence regarding E.M.'s 2012 grand-jury proceeding, and in admitting evidence regarding the underlying grand-jury proceeding.
>
> [*P44] *Crim.R. 6(E)* governs grand-jury secrecy, and it provides:
>
>> Deliberations of the grand jury and the vote of any grand juror shall not be disclosed. Disclosure of other matters occurring before the grand jury may be made to the prosecuting attorney for use in the performance of his duties only pursuant to this rule. A grand juror, prosecuting attorney, interpreter, court reporter, or typist who transcribes recorded testimony, may disclose other matters occurring before the grand jury, only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No grand juror, officer of the court, or other person shall disclose that an indictment has been found against a person before such indictment is filed and the case docketed. The court may direct that an indictment shall be

14

> kept secret until the defendant is in custody or has been released pursuant to Rule 46. In that event the clerk shall seal the indictment, the indictment shall not be docketed by name until after the apprehension of the accused, and no person shall disclose the finding of the indictment except when necessary for the issuance of a warrant or summons. No obligation of secrecy may be imposed upon any person except in accordance with this rule.

[*P45] Stites argues that E.M.'s testimony violated Crim.R. 6(E). E.M. testified regarding how she had disclosed See's abuse in 2012, leading to a police investigation. E.M. did not testify in front of the 2012 grand jury. E.M. was told that the grand jury refused to issue an indictment against See because of "a lack of physical evidence."

[*P46] Crim.R. 6(E) does not impose any secrecy obligations on a victim in a grand-jury proceeding, except to the extent that it provides that no person can disclose that an indictment has been found until the indictment is filed and a case docketed. The rule also provides: "No obligation of secrecy may be imposed upon any person except in accordance with this rule." Therefore, E.M.'s testimony regarding the 2012 grand-jury proceeding, which had occurred years prior and did not result in an indictment, does not violate Crim.R. 6(E).

[*P47] Stites also argues that the state improperly questioned Norwood Police Officer Kilby and Stites regarding the 2012 grand-jury proceeding. Officer Kilby testified that he had reviewed the grand-jury transcript from 2012. He noted that E.M. did not testify, but that Stites had "testified against" E.M. When the state cross-examined Stites, Stites admitted that she had testified at the 2012 grand-jury proceeding, and that her testimony was the same then as it was at trial.

[*P48] Officer Kilby's testimony that E.M. did not appear in front of the 2012 grand jury was merely cumulative of E.M.'s testimony. As to the evidence that Stites testified against E.M., Crim.R. 6(E) does not protect the grand-jury testimony of defendants or codefendants from later disclosure. See Crim.R. 16(J)(2); State v. Greer, 66 Ohio St.2d 139, 150, 420 N.E.2d 982 (1981). Moreover, the record indicates that the state notified Stites of its intent to use the 2012 grand-jury testimony at trial. Thus, Crim.R. 6(E) does not protect Stites's 2012 grand-jury testimony from disclosure at trial.

[*P49] Stites further argues that the admission of evidence related to the grand-jury proceeding in the underlying case violated *Crim.R. 6(E)*. Stites argues that the trial court erred in allowing Officer Kilby to testify in general terms as to the grand-jury process, and to list the witnesses who testified before the grand jury. Stites argues that Officer Kilby should not have been able to list a grand-jury witness whom the state did not call as a witness at trial.

[*P50] It is not clear that *Crim.R. 6(E)* bars Officer Kilby's discussion of the grand-jury process, or that *Crim.R. 6(E)* bars Officer Kilby from listing the names of witnesses who testified at grand jury. Moreover, Officer Kilby did not disclose the substance of any of the witnesses' testimony. Therefore, Stites has not demonstrated that Officer Kilby's testimony related to the underlying grand-jury proceeding amounted to plain error. *See Crim.R. 52(B)*; *State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio 68, 759 N.E.2d 1240 (2002)* (a party claiming plain error under *Crim.R. 52(B)* must show that an obvious error occurred, which affected the outcome of the trial).

[*P51] Because the admission of evidence related to the 2012 and underlying grand-jury proceedings did not violate *Crim.R. 6(E)* and did not otherwise amount to plain error, we overrule Stites's sixth assignment of error.

(State Court Record, Exhibit 10, Opinion, *State v. Stites*, 2020-Ohio-4281, ECF No. 9, PageID #: 127).

The Ohio courts determined that Stites's claim fails under Ohio law. Stites did not present a due process claim to the state courts to adjudicate. Because the claim arises under State law, and it was squarely addressed by the state courts as such and found to be meritless, that is the end of the inquiry for this Court. Stites's claim must be dismissed.

**CONCLUSION**

For the reasons stated herein, Respondent respectfully submits that the petition for writ of habeas corpus and certificate of appealability should be denied.

Moreover, because the instant habeas grounds involve legal issues that can be resolved on the record without additional factual inquiry, there is no need for an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Getsy v. Mitchell*, 495 F.3d 295, 310-311 (6th Cir. 2007)(*en banc*).

    Respectfully submitted,

    DAVE YOST
    Ohio Attorney General

    s/ M. Scott Criss
    M. SCOTT CRISS (0068105)
    Assistant Attorney General
    Criminal Justice Section
    30 East Broad Street, 23rd Floor
    Columbus, Ohio 43215
    (614) 644-7233
    (866) 393-1150 fax
    scott.criss@OhioAGO.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Respondent's Answer/Return of Writ* was electronically filed on August 6, 2021 and sent to Petitioner Angela M. Stites, #W103-202, at the Dayton Correctional Institute, P.O. Box 17249, Dayton, Ohio 45417, via U.S. mail, postage prepaid, on this same day.

s/ M. Scott Criss<br>
M. SCOTT CRISS